IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WAVEFRONT TECHNOLOGY SOLUTIONS, INC. f/k/a WAVEFRONT ENERGY AND ENVIRONMENTAL SERVICES, INC., and WAVEFRONT TECHNOLOGY SOLUTIONS USA INC. f/k/a WAVEFRONT ENERGY AND ENVIRONMENTAL USA INC., | § § § § § § § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-11-383 |
| | § | |
| ELAINE MORTON, GAS AND OIL ENHANCEMENT TOOLS, LLC, OIL & GAS ENHANCEMENT TOOLS, LLC, and U.S. OIL 4 ME L.L.C., | § § § § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND RECOMMENDATION**

Pending before the court[1] are Defendant Elaine Morton's ("Morton") Motion to Dismiss (Doc. 61),[2] Defendant Morton's Motion for Relief (Doc. 64), Defendant Morton's Motion to Vacate (Doc. 70), Defendant Morton's Motion to Change Venue (Doc.78), Defendant Morton's Motion to Strike Brett Davidson's Affidavit (Doc. 83),[3]

---

[1]     This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  Doc. 16.

[2]     Defendant filed two additional documents also labeled as motions to dismiss.  See Doc. 73, Def.'s Mot. to Dismiss (hereinafter "Def.'s Resp. to Pls.' Mot. in Opposition to Def.'s Mot. to Dismiss"); Doc. 74, Def.'s Mot to Dismiss. Upon review of the documents, the court construes them as replies to Plaintiffs' response in opposition to Defendant Morton's pending motion to dismiss.  See Doc. 61, Def.'s Mot. to Dismiss; Doc. 69, Pls.' Resp. in Opposition to Def.'s Mot. to Dismiss.

[3]     On March 5, 2012, Morton filed a motion entitled "Motion in Reference to the Affidavit of Brett Davidson."  See Doc. 83, Def.'s Mot. in Ref. to Aff. of Brett Davidson.  The court construes this document as a Motion to Strike Brett Davidson's Affidavit.

and Plaintiffs' Motion for Summary Judgment (Doc. 76). The court has considered the motions, all relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Defendant Morton's Motion to Dismiss be **DENIED**, Defendant Morton's Motion for Relief be **DENIED**, Defendant Morton's Motion to Vacate be **DENIED**, Defendant Morton's Motion to Change Venue be **DENIED,** and Defendant Morton's Motion to Strike Brett Davidson's Affidavit be **DENIED**. The court **RECOMMENDS** that Plaintiffs' Motion for Summary Judgment be **GRANTED IN PART** and **DENIED IN PART**.

## I.  Case Background

### A.  Factual History

Plaintiffs are engaged in the business of "designing leading edge integrated monitoring solutions for oil production maximization and developing fluid flow technologies that improve and enhance oil production, oil well stimulation, and oilfield disposal methodologies, and optimize groundwater remediation."[4] Plaintiffs claim that they intended to purchase U.S. Patent Number 5,836,389, invented by Dennis Wagner and Reed Juett and entitled "Apparatus and Method for Increasing Production Rates of Immovable and Unswept Oil Through the Use of Weak Elastic Waves" ("the Wagner

---

[4]      Doc. 1, Pls.' Compl., ¶ 11.

patent").[5]  To that end, they entered into negotiations with Morton and her company Oil Enhancement Tool, LLC ("OET"), the entity that presumably owned the Wagner patent, resulting in the execution of a Share Purchase Agreement between Morton, OET, and Plaintiffs on June 21, 2006.[6]

Plaintiffs further allege that, pursuant to the Share Purchase Agreement, they made a $100,000 good-faith down payment and had 120 days to conduct a due diligence inquiry.[7]  Morton executed a promissory note securing the payment.[8]  In accordance with the terms of the Share Purchase Agreement, Plaintiffs ultimately decided not to go through with the sales transaction and demanded the return of the $100,000 payment.[9]  According to Plaintiffs, Morton and OET refused to return the payment.[10]

Subsequently, Plaintiffs agreed to "release Morton from her obligations under the Share Purchase Agreement and the Promissory Note in exchange for a fully-paid non-exclusive license" for the Wagner patent.[11]  Thus, on February 22, 2007, Plaintiffs entered

---

[5]     See id. ¶ 13.

[6]     See id. ¶ 14; Doc. 76-2, Ex. 1 to Pls.' Mot. for Summ. J., License Agreement, p. 1.

[7]     See Doc. 1, Pls.' Compl., ¶ 16.

[8]     See id.

[9]     See id. ¶ 17.

[10]    See id.

[11]    Doc. 76-2, Ex. 1 to Pls.' Mot. for Summ. J., License Agreement, p. 1.

into a License Agreement with Morton and her company Gas and Oil Enhancement Tools, LLC ("GOET")[12] to obtain a non-exclusive license for the Wagner patent.[13]

Under the License Agreement, Morton and GOET represented and warranted that GOET owned a one-fourth interest in the Wagner patent, with Stephen Simonton ("Simonton") and Dennis Wagner ("Wagner") owning the remaining three-fourths interest, and that no agreement existed between the owners of the Wagner patent.[14]  Among other representations, Morton and GOET further warranted that, with the exception of a company in Illinois to which exclusive rights to the Wagner patent had been granted for a limited time, no other person or entity held any interest or right in the patent.[15]

However, prior to the execution of the License Agreement and unbeknownst to Plaintiffs, on January 31, 2007, Morton had recorded an assignment of the Wagner patent from GOET to another of her companies, Oil & Gas Enhancement Tools, LLC ("OGET").[16]  Twenty-three days later, Morton and GOET nonetheless executed the

---

[12]     As president of GOET, Morton signed the License Agreement on its behalf, as well as in her individual capacity.   See Doc. 76-2, Ex. 1 to Pls.' Mot. for Summ. J., License Agreement, p. 7.

[13]     See Doc. 76-1, Pls.' Mot. for Summ. J., Brett Davidson Aff., ¶ 2; Doc 1, Pls.' Compl., ¶ 13.

[14]     See Doc. 76-2, Ex. 1 to Pls.' Mot. for Summ. J., License Agreement, ¶ 4.1.

[15]     See id.

[16]     See Doc. 76-5, Ex. 4 to Pls.' Mot. for Summ. J., Patent Assign. from GOET to OGET.

aforementioned License Agreement with Plaintiffs.[17]   Pursuant to paragraph twelve of the License Agreement, Morton and OGET agreed that "[t]o the extent any conflict exists between any aspect of this Agreement and any other agreement to which Morton or GOET is a party, then such other agreement shall be subject to this Agreement and such conflict shall be resolved in favor of [Plaintiffs'] rights hereunder."[18]  Although Morton was aware of the conflict between the assignment to OGET and the License Agreement, the conflict remained unresolved.[19]

Nearly four years later, in November 2010, Morton and her company U.S. Oil 4 Me, L.L.C ("U.S. Oil") disseminated two advertisements via mass email and freeclassifiedads.com for the sale of a five-year, non-exclusive license for the Wagner patent.[20] Morton and U.S. Oil posted a similar advertisement on

---

[17]    See Doc. 76-2, Ex. 1 to Pls.' Mot. for Summ. J., License Agreement.

[18]    See Doc. 76-2, Ex. 1 to Pls.' Mot. for Summ. J., License Agreement, ¶ 12.

[19]    See Doc. 76-1, Pls.' Mot. for Summ. J., Brett Davidson Aff., ¶ 11. The court notes that Morton has also included emails purportedly between Plaintiffs' Chief Executive Officer ("CEO") Brett Davidson and Morton about the ownership discrepancy in the License Agreement, which identified GOET as an owner of the Wagner patent despite GOET's previous assignation of its ownership interest to OGET.  See Doc. 73, Def.'s Resp. to Pls.' Mot. in Opposition to Def.'s Mot. to Dismiss; Doc. 42, Def.'s Resp. to Pls.' Mot. for Protective Or., pp. 3-4.  Considering these emails as admissions against the interest of the offering party, Morton, the court finds that they support Plaintiffs' contention that Morton was aware of the conflict and was thus obligated to resolve it pursuant to the terms of the License Agreement.  See Fed. R. Civ. P. 56(e).

[20]    See Doc. 76-1, Pls.' Mot. for Summ. J., Brett Davidson Aff., ¶¶ 18-19; Doc. 76-12, Ex. 11 to Pls.' Mot. for Summ. J., Mass Email Advertisement; Doc. 76-13, Ex. 12 to Pls.' Mot. for Summ. J., Freeclassifiedads.com Advertisement.

www.usmarketdb.com.[21]  In each of the three advertisements, Morton boasted that an increase in oil production by Plaintiffs proved the success of the Wagner patent because Plaintiffs had obtained a license to the patent.[22]  Plaintiffs deny that their increase in oil production was achieved by means of the Wagner patent.[23]

Plaintiffs also claim that between January 30, 2009, and January 30, 2011, Morton published five disparaging online postings regarding Plaintiffs and Brett Davidson ("Davidson"), Plaintiffs' CEO, on the public site www.stockhouse.com under the pseudonym "Whimsical."[24]  One of the postings, dated March 26, 2010, and signed with Morton's e-mail address,[25] stated as follows:

> WEE [Wavefront] does not have a fully paid up license with my patent # 5836389. . . . He tried to buy patent interest in 2007 and defaulted.  He has referred to this before in interviews. The potential purchase was meant for protection with ASR lawsuit. Davidson is 100% B.S.!  No proof of anything!!!

---

[21]     See Doc. 76-1, Pls.' Mot. for Summ. J., Brett Davidson Aff., ¶ 20; Doc. 76-14, Ex. 13 to Pls.' Mot. for Summ. J., www.usmarketdb.com Advertisement.

[22]     See Doc. 76-12, Ex. 11 to Pls.' Mot. for Summ. J., Mass Email Advertisement; Doc. 76-13, Ex. 12 to Pls.' Mot. for Summ. J., Freeclassifiedads.com Advertisement; Doc. 76-14, Ex. 13 to Pls.' Mot. for Summ. J., www.usmarketdb.com Advertisement. Specifically, the advertisements read: "$35,000 for a 5 Yr. non-exclusive Patent license, unlimited use, and CADS drawn off substantiated Data reports of up to 41% increase of Oil RECOVERY. Wave Front Technology Solutions Inc. V.WEE obtained License in 2007.  Substantiates Proof of success . . ." Id.

[23]     See Doc. 76-1, Pls.' Mot. for Summ. J., Brett Davidson Aff., ¶ 18.

[24]     See Doc. 76-1, Pls.' Mot. for Summ. J., Brett Davidson Aff., ¶¶ 12-15; Docs. 76-7, 76-8, 76-9, 76-10, and 76-11, Exs. 6-10 to Pls.' Mot. for Summ. J., www.stockhouse.com Postings by "Whimsical."

[25]     Given that Morton continues to use the email address emorton96@mac.com in her correspondence with the court and Plaintiffs, the court takes notice that the email account belongs to and is controlled by Morton.  See, e.g., Doc. 26, Def.'s Objections to Pls.' Req. for Default J., Email from Morton to Court Using emorton96@mac.com Address.

> Would like to know "if" and where he is using this as
> well! [H]e needs to substantiate what he [ ] is
> posting!  I have posted this before and it goes
> ignored, not anymore!
> emorton96@mac.com.[26]

A posting dated the following day, March 27, 2010, stated, ". . .
Brett Davidson knows exactly who we are, and knows he has been
caught MISREPRESENTING before.  We no longer own the PATENT,
however he should not be soliciting its use in his financials as
well!"[27]

Seven months later, on October 20, 2010, another posting by
"Whimsical" claimed that "[Brett Davidson] is an impressive
manipulator until you do business with him.  As a result of past
experiences and claimed execution of Documents, Wavefront can be
challenged on their existing Patents being now implemented . . .
."[28]  The most recent posting, dated January 30, 2011, described
Davidson as a "flake and a liar" and encouraged shareholders to
inform themselves about Davidson's deficiencies.[29]   Plaintiffs

---

[26]    Doc. 76-8, Ex. 7 to Pls.' Mot. for Summ. J., March 26, 2010 Posting.
The first posting, dated January 30, 2010, stated:
> Shareholders freak too when thier [sic] hard earned money is
> fed to big pocket board members.  And they are lied to!  Show
> us some proof of something.  What did the board members put up
> for their stock option?  Wave is one day remediation, another
> day oil enhancement, energy, technology, show us something
> other than lip service!!  Maybe at the annual meeting?
Doc. 76-7, Ex. 6 to Pls.' Mot. for Summ. J., Jan. 30, 2009 Posting.

[27]    Doc. 76-9, Ex. 8 to Pls.' Mot. for Summ. J., March 27, 2010 Posting.

[28]    Doc. 76-10, Ex. 9 to Pls.' Mot. for Summ. J., October 20, 2010
Posting.

[29]    Doc. 76-11, Ex. 10 to Pls.' Mot. for Summ. J., January 30, 2011
Posting.  In its entirety, the posting reads:
> YES, YES, AND YES.  I am a shareholder from the time stock was
> over $5 and Brett conned me then.  BIG TIME!  He is a "flake

subsequently initiated the present action.

**B.   <u>Procedural History</u>**

On January 28, 2011, Plaintiffs filed this action against Defendant Morton and Defendants GOET, OGET, and U.S. Oil 4 Me L.L.C. (collectively, "Corporate Defendants").[30]   Plaintiffs alleged breach of contract, fraud, negligent misrepresentation, defamation, business disparagement, false advertising and unfair competition under the Lanham Trademark Act ("Lanham Act"),[31] 15 U.S.C. § 1125(a), and common law unfair competition.[32]   Plaintiffs seek damages and declaratory relief.[33]

Proceeding pro se and on behalf of the Corporate Defendants, Defendant Morton wrote letters to the court and copied the court on letters to Plaintiffs' counsel but did not formally answer the allegations until ordered by the court to do so.[34]   In May 2011, the court explained to Morton that she may defend herself pro se but

---

and a liar," fill of B.S.   It is overtime time [sic] for
shareholders to be apprised.   Management should RETREAT AND
RELOAD, LOTS of other capable qualified gentlem[e]n.   I can
back up proof of accusations.   E-Mailed him today.
Do your own D.D.
or call him.
519-841-2273
brett@on the wavefront.com
I shall prove how "NUTS I AM"!
<u>Id.</u>

[30]     <u>See</u> Doc. 1, Pls.' Compl.

[31]     15 U.S.C. §§ 1114-1127.

[32]     <u>See</u> Doc. 1, Pls.' Compl., ¶¶ 34-88.

[33]     <u>Id.</u> at pp. 17-18.

[34]     <u>See</u> Doc. 33, Mem., Recommendation, & Order Dated June 24, 2011, pp.
3-6; <u>see also</u> Doc. 34, Def.'s Ans.

may not represent the Corporate Defendants as she is not an attorney.[35]   At that time, the court also ordered each of the Corporate Defendants to hire an attorney and file an answer to the lawsuit within twenty-one days of receipt of the court's order.[36] Upon the Corporate Defendants' failure to comply with this order, the court granted Plaintiffs' motion for entry of default judgment against the three Corporate Defendants.[37]

At a hearing held on January 24, 2012, the remaining parties were given a February 24, 2012 deadline for filing dispositive motions.[38]  Six days after the hearing, on January 30, 2012, Morton filed the pending motion to dismiss.[39]  A week later, Morton filed the pending motion for relief.[40]  Plaintiffs responded to Morton's motion to dismiss on February 13, 2012, the same day that Morton filed the pending motion to vacate.[41]  On February 24, 2012, the deadline for filing dispositive motions, Plaintiffs filed the pending motion for summary judgment.[42]   Morton did not file a

------

[35]   See Doc. 30, Order Dated May 18, 2011, p. 4.

[36]   See id.

[37]   See Doc. 33, Mem., Recommendation, & Order Dated June 24, 2011, pp. 6-7; Doc. 35, Order Dated July 21, 2011.

[38]   See Doc. 59, Jan. 24 H'rg Minutes.

[39]   See Doc. 61, Def.'s Mot. to Dismiss.

[40]   See Doc. 64, Def.'s Mot. for Relief.

[41]   See Doc. 69, Pls.' Resp. to Def.'s Mot. to Dismiss; Doc. 70, Def.'s Mot. to Vacate.

[42]   See Doc. 76, Pls.' Mot. for Summ. J.

response to Plaintiffs' motion.    Morton did, however, file the
pending motion to change venue and motion to strike on February 27,
2012, and March 5, 2012, respectively.[43]

## II.  Defendant's Motions

Before turning to the merits of the summary judgment motion,
the court addresses Morton's motion to dismiss, motion to vacate,
motion for relief, motion to change venue, and motion to strike.

## A.  Motion to Dismiss, Motion to Vacate, Motion for Relief, and Motion to Change Venue

Pursuant to Rule 12(b)(6), dismissal of an action is
appropriate whenever the complaint, on its face, fails to state a
claim upon which relief can be granted.  When considering a motion
to dismiss, the court should construe the allegations in the
complaint favorably to the pleader and accept as true all well-
pleaded facts.  Sullivan v. Leor Energy, LLC, 600 F.3d 542, 546 (5th
Cir. 2010).    A complaint need not contain "detailed factual
allegations," but must include sufficient facts to indicate the
plausibility of the claims asserted, raising the "right to relief
above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S.
544, 555 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 129
S.Ct. 1937, 1949 (2009).    A plaintiff must provide "more than
labels and conclusions" or "a formulaic recitation of the elements
of a cause of action."  Bell Atl. Corp., 550 U.S. at 555.  In other
words, the factual allegations must allow for an inference of "more

---

[43]    See Doc. 78, Def.'s Mot. to Change Venue; Doc. 83, Def.'s Mot. to
Strike Davidson's Aff.

than a sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S.Ct. at 1949.

As the court understands Morton's motions, Morton contends that the case should be dismissed or vacated because (1) the Share Purchase Agreement executed on June 21, 2006, was invalid; (2) GOET did not own the Wagner Patent when the Licensing Agreement was executed on February 22, 2007; and (3) the dispute is governed by Delaware state law under the terms of the License Agreement.  The court finds no merit to these arguments for the reasons stated below.

Morton first claims that the Share Purchase Agreement executed on June 21, 2006, was invalid because an entity known as Oil Production Enhancement Technologies, L.L.C. (OPET), as opposed to OET, owned the Wagner Patent on that date.[44]  She then contends that the Share Purchase Agreement "was a platform for the License and without the Share Purchase Agreement, there would be no License."[45] The court disagrees.  Whether the Share Purchase Agreement was valid has no bearing on the validity of the Licensing Agreement or the merits of Plaintiffs' claims arising out of the Licensing Agreement.

Morton next contends that GOET did not own the Wagner Patent when the License Agreement between GOET, Morton, and Plaintiffs was

---

[44]    See Doc. 61, Def.'s Mot. to Dismiss, p. 2.

[45]    Doc. 73, Def.'s Resp. to Pls.' Mot. in Opposition to Def.'s Mot. to Dismiss.

executed.   That GOET did not own the Wagner Patent as represented under the License Agreement constitutes the crux of Plaintiffs' claims for breach of contract, fraud, and negligent misrepresentation.[46]   As such, Morton's argument does not warrant dismissal of Plaintiffs' articulated claims.

Finally, Morton directs the court's attention to paragraph fifteen of the License Agreement, entitled "Governing Law," in support of her contention that the court does not have jurisdiction over this case.[47]   Under this provision, the License Agreement "shall be construed in accordance with and governed by the laws of the State of Delaware."[48]   Pursuant to Texas law governing choice-of-law contractual provisions, "the substantive law of the state chosen by the parties to govern their contractual rights and duties will be applied unless the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice."   United States v. Reid & Gary Strickland Co., 161 F.3d 915, 919 (5th Cir. 1998); see DB Western, Inc.-Tex. v. Invista, S.A. R.L., No. H-09-2750, 2009 WL 3297297, *1 (S.D. Tex. Oct. 13, 2009).   Plaintiffs do not contest, that, pursuant to the License Agreement, Delaware substantive law

---

[46]   See Doc. 1, Pls.' Compl., ¶¶ 34-50.

[47]   See Doc. 76-2, Ex. 1 to Pls.' Mot. for Summ. J., License Agreement, ¶ 15.

[48]   Id.

12

governs Plaintiffs' breach of contract claim.[49]   Contrary to Morton's position, however, the choice-of-law provision does not deprive the court of jurisdiction; rather, the provision merely dictates that the court apply Delaware substantive law in analyzing Plaintiffs' breach-of-contract claim.   Dismissal of the case on improper venue grounds is therefore improper.

Because Plaintiffs have articulated sufficient facts to support their claims, and Morton has failed to establish a basis for dismissal, the court **RECOMMENDS** that Morton's Motion to Dismiss be **DENIED**.

Given that Morton raises the same argument regarding the application of Delaware law in her motion to vacate, motion for relief, and motion to change venue, the court **RECOMMENDS** that Morton's motion to vacate, motion for relief, and motion to change venue be similarly **DENIED**.

**B.  Motion to Strike**

As the court construes Morton's single-sentence motion to strike, Morton contends that Davidson's affidavit is invalid because it lacks a signature date.   The court finds that this argument is without merit.

An affidavit is defined as a "voluntary declaration of facts

---

[49]   Because the terms of the choice-of-law provision narrowly provide that Delaware law governs only the License Agreement itself, the substantive law of the forum state, Texas, governs Plaintiffs' remaining state law causes of action.   See, e.g., Smith v. EMC Corp., 393 F.3d 590, 597 (5th Cir. 2004) (citing Thompson & Wallace of Memphis, Inc. v. Falconwood Corp., 100 F.3d 429, 433 (5th Cir. 1996)).

written down and sworn by the declarant before an officer authorized to administer oaths." Black's Law Dictionary 66 (9th ed. 2009). Morton does not direct the court's attention to, and the court has not located, applicable federal law requiring the inclusion of a signature date in order to establish an affidavit's validity. <u>See</u> <u>FCA Inv. Co. v. Baycorp Advantage Ltd.</u>, 2005 WL 1653056, *1 (S.D. Tex. July 8, 2005) (unpublished) ("Other than affidavits submitted in support of summary judgment motions, federal law appears to have no particular provisions relating to affidavits."). Here, Davidson's affidavit is signed by Davidson and certified by a notary public in the province of Ontario,[50] in accordance with the defined requirements of an affidavit.

Accordingly, the court **RECOMMENDS** that Morton's motion to strike be **DENIED**.

### III.  Plaintiffs' Motion for Summary Judgment

**A.  <u>Summary Judgment Standard</u>**

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Brown v. City of Houston, Tex.</u>, 337 F.3d 539, 540-41 (5th Cir.

---

[50]   Although Plaintiffs' original filing of Davidson's affidavit lacked the signature of a person authorized to administer oaths—and was thus not in compliance with the legal definition of a valid affidavit—Plaintiffs remedied this deficiency by filing a new signature page with the requisite signatures. <u>See</u> Doc. 81, Pls.' Not. of Lodgement of New Signature Page to Brett Davidson's Aff.

2003).   A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.   _Anderson v. Liberty Lobby, Inc._, 477 U.S. 242, 248 (1986); _Ameristar Jet Charter, Inc. v. Signal Composites, Inc._, 271 F.3d 624, 626 (5th Cir. 2001).   To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party.   _Anderson_, 477 U.S. at 250; _TIG Ins. Co. v. Sedgwick James of Wash._, 276 F.3d 754, 759 (5th Cir. 2002).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues.   _Celotex Corp._, 477 U.S. at 323; _Topalian v. Ehrman_, 954 F.2d 1125, 1131 (5th Cir. 1992).   If the moving party can show an absence of record evidence in support of one or more elements of the case for which the nonmoving party bears the burden, the movant will be entitled to summary judgment.   _Celotex Corp._, 477 U.S. at 322.   In response to a showing of lack of evidence, the party opposing summary judgment must go beyond the pleadings and proffer evidence that establishes each of the challenged elements of the case, demonstrating that genuine issues of material fact do exist that must be resolved at trial.   _Id._ at 324.

When considering the evidence, "[d]oubts are to be resolved in

favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party." Evans v. City of Houston, 246 F.3d 344, 348 (5th Cir. 2001); see also Boston Old Colony Ins. Co. v. Tiner Assocs. Inc., 288 F.3d 222, 227 (5th Cir. 2002).  The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence." Honore v. Douglas, 833 F.2d 565, 567 (5th Cir. 1987).

However, the nonmoving party must show more than "some metaphysical doubt as to the material facts." Meinecke v. H & R Block of Houston, 66 F.3d 77, 81 (5th Cir. 1995).  Conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a scintilla of evidence will not carry this burden.  Brown, 337 F.3d at 541; Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002).  The court must grant summary judgment if, after an adequate period of discovery, the nonmovant fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

B.  **Analysis**

Plaintiffs identified the following causes of action in their original complaint: (1) breach of contract; (2) fraud; (3) negligent misrepresentation; (4) declaratory judgment; (5) defamation and business disparagement; (6) false advertising

16

pursuant to § 1125(A) of the Lanham Act; and (7) unfair competition under § 1125(A) of the Lanham Act and under the common law. Plaintiffs seek summary judgment on all of their causes of action, with the exception of unfair competition under the Lanham Act. The court considers the merits of Plaintiffs' motion without the benefit of a response from Morton, who did not file one.

### 1.  Breach of Contract

Pursuant to paragraph fifteen of the License Agreement, Delaware law governs Plaintiffs' breach of contract claim.[51]   In Delaware, a breach of contract claim requires proof of: (1) the existence of a contract; (2) the breach of an obligation imposed by that contract; and (3) damage to the non-breaching party resulting from the breach.  See VLIW Tech., LLC v. Hewlett-Packard Co., 840 A.2d 606, 612 (Del. 2003).

Supporting their motion for summary judgment, Plaintiffs direct the court's attention to the warranties and representations made by Morton under paragraph four of the License Agreement.[52] Specifically, Morton represented that GOET owned a one-fourth interest in the Wagner patent, with Simonton and Wagner owning the remaining three-fourths.[53]  She further warranted that, aside from

---

[51]   See Doc. 76-2, Ex. 1 to Pls.' Mot. for Summ. J., License Agreement, ¶ 15.

[52]   See Doc. 76-2, Ex. 1 to Pls.' Mot. for Summ. J., License Agreement, ¶ 4.1.

[53]   See id.

Simonton, Wagner, and an Illinois company with an exclusive license for a limited time, "no other persons or entities . . . own or hold any right in interest in or to the [Wagner] patent."[54]

Summary judgment evidence produced by Plaintiffs shows that Morton had assigned GOET's interest in the Wagner patent to OGET on January 31, 2007, twenty-three days prior to executing the License Agreement with Plaintiffs, thereby creating a conflict in the ownership and license interests warranted in the License Agreement.[55] Supported by affidavit, as well as email exchanges included by Morton in filings with the court, Morton was aware of and notified Plaintiffs about the conflict in ownership arising from the assignment.[56]

This conflict triggered paragraph twelve of the License Agreement, in which Morton and OGET agreed that "[t]o the extent any conflict exists between any aspect of this Agreement and any other agreement to which Morton or GOET is a party, then such other agreement shall be subject to this Agreement and such conflict

---

[54]      Id.

[55]      See Doc. 76-5, Ex. 4 to Pls.' Mot. for Summ. J., Patent Assign. from GOET to OGET.

[56]      See Doc. 76-1, Pls.' Mot. for Summ. J., Brett Davidson Aff., ¶ 11; Doc. 73, Def.'s Resp. to Pls.' Mot. in Opposition to Def.'s Mot. to Dismiss. Further, an email from Morton to Davidson, dated June 26, 2007, reads as follows:
> It has been brought to my attention . . . that inadvertently, you, your [attorneys], and myself did not catch the fact that my Patent interest is held under Oil and Gas Enhancement Tools LLC.  NOT Gas and Oil.  The agreement was drawn up and executed incorrectly.

Doc. 42, Def.'s Resp. to Pls.' Mot. for Protective Or., pp. 3-4, June 26, 2007 Email from Morton to Davidson.

shall be resolved in favor of [Plaintiffs'] rights hereunder."[57] Morton, however, failed to resolve the conflict pursuant to paragraph twelve and convey the one-fourth interest in the Wagner patent.[58] As a result of the breach, Plaintiffs incurred damages.[59] Given this competent summary judgment evidence, in conjunction with Morton's failure to produce any evidence raising an issue of fact, the court finds that Morton is liable for breach of contract under paragraphs four and twelve of the License Agreement.

Plaintiffs have alleged that they were damaged in the amount of $100,000, but they have failed to provide competent summary judgment evidence of such damages.[60] Although Plaintiffs' expert report indicates that Plaintiffs made a $100,000 payment to Morton pursuant to the Share Purchase Agreement, received a promissory note from Morton in return, and subsequently made a demand for the $100,000 payment,[61] this report is unauthenticated and therefore cannot be considered in determining summary judgment. See Fed. R. Civ. P. 56(c); Fed. R. Evid. 901. The amount of damages, or the extent of equitable relief, to which Plaintiffs are entitled for Morton's breach is therefore an issue to be resolved by the trier

---

[57]     See Doc. 76-2, Ex. 1 to Pls.' Mot. for Summ. J., License Agreement, ¶ 12.

[58]     See Doc. 76-1, Pls.' Mot. for Summ. J., Brett Davidson Aff., ¶ 11.

[59]     See id.

[60]     See Doc. 76-6, Ex. 5 to Pls.' Mot. for Summ. J., Expert Rep. on Damages, pp. 3, 9-10

[61]     See id.

of fact.[62]

Accordingly, the court **RECOMMENDS** that Plaintiffs' motion for summary judgment be **GRANTED** as to Morton's liability and **DENIED** as to damages on the breach of contract claim. The court will reconsider this determination upon Plaintiffs' filing of competent summary judgment evidence establishing the amount of damages incurred by Morton's breach.

### 2. Fraudulent Inducement

Plaintiffs seek summary judgment on their cause of action for fraud, which the court interprets as a claim of fraudulent inducement. In Texas,[63] fraudulent inducement "arises only in the context of a contract and requires the existence of a contract as part of its proof," as well as proof of the same elements as a fraud claim. Haase v. Glazner, 62 S.W.3d 795, 798 (Tex. 2001); see Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors,

---

[62]     In addition to monetary and declaratory relief, Plaintiffs' complaint requests that the court grant:
> [S]pecific performance of the License Agreement and an Order requiring Morton, GOET, OGET, and U.S. Oil to sign all agreements, assignments and any other documents and perform all acts necessary to effect the grant of the license rights to Wavefront granted in the License Agreement.

Doc. 1, Pls.' Compl., p. 18. Specific performance, however, "is an equitable remedy used as a substitute for monetary damages when such damages would not be adequate." Stafford v. S. Vanity Magazine, Inc., 231 S.W.3d 530, 535 (Tex. App.-Dallas 2007, pet. denied). Plaintiffs' pending motion for summary judgment on the breach of contract claim implicates only compensatory damages. Whether Plaintiffs are entitled to equitable relief thus remains an issue to be resolved by the trier of fact.

[63]     In their motion for summary judgment, Plaintiffs cite Texas law to the court for their fraudulent inducement claim without discussing that tort's nexus to Texas. Morton has not filed any objections to Plaintiffs' application of Texas law to this cause of action. Therefore, in the absence of any choice-of-law analysis, the court will assume that Texas law applies to Plaintiffs' fraudulent inducement claim.

Inc., 960 S.W.2d 41, 52 (Tex. 1998); <u>DeSantis v. Wackenhut Corp.</u>, 793 S.W.2d 670, 688 (Tex. 1990), <u>cert. denied</u>, 498 U.S. 1048 (1991).

Thus, a party alleging fraudulent inducement under Texas law must establish the existence of a contract and prove that: "(1) a material representation was made; (2) it was false when made; (3) the speaker either knew it was false, or made it without knowledge of its truth; (4) the speaker made it with the intent that it should be acted upon; (5) the party acted in reliance; and (6) the party was injured as a result." <u>Coffel v. Stryker Corp.</u>, 284 F.3d 625, 631 (5th Cir. 2002) (applying Texas law); <u>see</u> <u>Rio Grande Royalty Co., Inc. v. Energy Transfer Partners, L.P.</u>, 620 F.3d 465, 468 (5th Cir. 2010) (citing <u>Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.</u>, 51 S.W.3d 573, 577 (Tex. 2001)).

Here, Plaintiffs contend that the contract at issue is the License Agreement and that Morton fraudulently misrepresented GOET's ownership interest in the Wagner patent in order to keep the $100,000 down payment, discussed above, as a license fee. That the License Agreement exists is undisputed by the parties. <u>See</u> <u>Haase</u>, 62 S.W.3d at 798 (requiring proof of the existence of a contract as part of a fraudulent inducement claim). The court thus proceeds to analyze Plaintiffs' evidence establishing the remaining elements of their claim.

Regarding the first element, whether Morton made a material

representation, the summary judgment evidence shows that Morton represented to Plaintiffs that GOET owned a one-fourth interest in the Wagner patent and that no other person or entity—aside from named co-owners and an Illinois licensee—held any right or interest in the patent.[64]   Plaintiffs argue, and the court agrees, that GOET's ownership of the Wagner patent constitutes a material representation given that Morton and GOET were purporting to grant a license to Plaintiffs based on GOET's ownership interest in the patent.

As to the second element, whether the representation was false when made, the evidence produced by Plaintiffs unequivocally shows that Morton assigned GOET's ownership interest in the patent to OGET on January 31, 2007, twenty-three days before making the aforementioned representations in the License Agreement.[65] Regarding the third element, the summary judgment evidence indicates that Morton was aware her representation was false when made, or was at least reckless in making the representation.[66]

Satisfying the fourth and fifth elements of the fraud claim, competent summary judgment evidence indicates that Morton intended

---

[64]    See Doc. 76-2, Ex. 1 to Pls.' Mot. for Summ. J., License Agreement, ¶ 4.1.

[65]    See Doc. 76-5, Ex. 4 to Pls.' Mot. for Summ. J., Patent Assign. from GOET to OGET; Doc. 76-2, Ex. 1 to Pls.' Mot. for Summ. J., License Agreement, ¶ 4.1, p. 7.

[66]    See Doc. 76-1, Pls'. Mot. for Summ. J., Brett Davidson Aff., ¶ 9; see also Doc. 73, Def.'s Resp. to Pls.' Mot. in Opposition to Def.'s Mot. to Dismiss; Doc. 42, Resp. to Pls.' Opposed Mot. for Protective Or., pp. 3-4

Plaintiffs to act on the representations of the patent's ownership by entering into the License Agreement.[67]  Believing that GOET had a transferable ownership interest in the Wagner patent, Plaintiffs entered into the License Agreement.[68]

In support of the final element of Plaintiffs' fraudulent inducement claim, damages, Davidson's affidavit states that "Plaintiffs suffered injury as a result of Morton's fraudulent misrepresentations," and cites to Davidson's expert opinion on damages.[69]  However, as discussed above, Davidson's expert opinion does not constitute competent summary judgment evidence of the injury allegedly sustained because of Morton's fraudulent misrepresentations.  See Fed. R. Civ. P. 56(c); Fed. R. Evid. 901.

In response, Morton has not proffered any competent summary judgment evidence raising an issue of fact.  The court therefore finds that Plaintiffs have established Morton's liability for fraudulent inducement.  For the reasons discussed above, however, Plaintiffs have not provided competent summary judgment evidence of the actual damages suffered.  The court thus **RECOMMENDS** that Plaintiffs' motion for summary judgment be **GRANTED** as to Morton's liability for fraudulent inducement, and **DENIED** as to damages at

---

[67]   See Doc. 76-1, Pls.' Mot. for Summ. J., Brett Davidson Aff., ¶ 9.

[68]   See id.; Doc. 76-2, Ex. 1 to Pls.' Mot. for Summ. J., License Agreement.

[69]   See Doc. 76-1, Pls.' Mot. for Summ. J., Brett Davidson Aff., ¶ 9; see also Doc. 76-6, Ex. 5 to Pls.' Mot. for Summ. J., Expert Rep. on Damages.

this time.

### 3. Negligent Misrepresentation

In order to prove a claim for negligent misrepresentation, Plaintiffs must establish that: "(1) the representation [was] made by a defendant in the course of his business, or in a transaction in which he ha[d] a pecuniary interest; (2) the defendant supplied 'false information' for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffer[ed] pecuniary loss by justifiably relying on the representation." Fed. Land Bank Ass'n of Tyler v. Sloane, 825 S.W.2d 439, 442 (Tex. 1991)(adopting the standard set out in the Restatement (Second) of Torts § 552 (1977)); see also Coburn Supply Co. v. Kohler Co., 342 F.3d 372, 377 (5th Cir. 2003)(applying Texas law).[70]

Regarding the element of pecuniary loss, the economic loss rule, or independent injury requirement, "precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract." Lamar Homes, Inc. v. Mid-Continent Cas. Co., 242 S.W.3d 1, 12 (Tex. 2007)(citing Sw. Bell Tel. Co. v.

---

[70]     As with the claim for fraudulent inducement, Plaintiffs' motion cites Texas law in support of their negligent misrepresentation claim.  Morton has not interposed any objection to the application of Texas law to the torts arising from her breach of the License Agreement.  The court will therefore assume that Texas law applies to this cause of action.

<u>DeLanney</u>, 809 S.W.2d 493, 494-95 (Tex. 1991)).[71]  A plaintiff must therefore prove an injury separate from breach-of-contract damages in order to recover under the theory of negligent misrepresentation.  <u>D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.</u>, 973 S.W.2d 662, 663 (Tex. 1998) (implicitly rejecting the plaintiff's argument that inducement to contract satisfied the independent injury requirement).

Here, Plaintiffs have provided competent summary judgment evidence establishing that: (1) Morton, GOET's president, represented that GOET held an ownership interest in the Wagner patent when she executed the License Agreement releasing her from the performance of her purported obligations under the 2006 Share Purchase Agreement with Plaintiffs; (2) Morton made this representation to guide Plaintiffs in their business of oil technology; (3) Morton had assigned GOET's ownership interest in the Wagner patent to OGET only twenty-three days prior to making the warranties and representations in the License Agreement, and was aware of the discrepancy between the License Agreement and the actual ownership of the patent; and (4) Plaintiffs relied on Morton's representations when they entered into the License

---

[71]   The court notes that the economic loss rule does not preclude tort recovery for the fraudulent inducement of a contract even though the damages are economic in nature.  <u>See</u> <u>Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.</u>, (hereinafter <u>Formosa</u>) 960 S.W.2d 41, 43, 46 (Tex. 1998) (holding that the economic loss rule did not preclude recovery of purely economic damages in a fraudulent inducement cause of action); <u>D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.</u>, 973 S.W.2d 662, 663 (Tex. 1998) (holding that <u>Formosa</u> did not extend to causes of action for negligent misrepresentation).

Agreement, suffering pecuniary loss as a result.[72]

Plaintiffs have not, however, produced any competent summary judgment evidence that Morton had a duty separate from that imposed by the License Agreement and that Plaintiffs suffered pecuniary injury other than breach-of-contract damages.  See <u>D.S.A., Inc.</u>, 973 S.W.2d at 663.

Accordingly, the court **RECOMMENDS** that Plaintiffs' motion on the claim for negligent misrepresentation be **DENIED** pending further explanation of their injury, separate from breach-of-contract damages, that does not violate the economic loss rule.

### 4.  Declaratory Judgment

For a declaratory judgment to be appropriate, the question in each case must be "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  <u>MedImmune, Inc. v. Genentech, Inc.</u>, 549 U.S. 118, 127 (2007).

Plaintiffs' argument for declaratory judgment reads as follows:

> [T]here is an actual and justiciable case or controversy between Plaintiffs and Morton as to whether Wavefront has a non-exclusive license under the Wagner patent.  Plaintiffs contend that there is a conflict between the License Agreement and the OGET

---

[72]    <u>See</u> Doc. 76-1, Pls.' Mot. for Summ. J., Brett Davidson Aff., ¶ 10.

> assignment that should be resolved in favor of
> Wavefront in accordance with paragraph 12 of the
> License Agreement.  Morton refuses to do so.
> Plaintiffs are entitled to entry of a declaratory
> judgment that they have a non-exclusive license under
> the Wagner patent as more fully set forth in
> paragraph 2 of the License Agreement, and that the
> conflict between the OGET assignment and the License
> Agreement is and should be resolved in favor of
> Plaintiffs' rights, as provided for in paragraph 12
> of the License Agreement.[73]

Under the License Agreement, Morton and GOET purported to "grant to [Plaintiffs] a fully paid-up, permanent, irrevocable license under the [Wagner patent] with all necessary and sufficient rights for it to conduct its business related to the Licensed Products and Licensed Methods in the Territory."[74]  Morton's assignment of GOET's ownership interest in the Wagner patent to OGET twenty-three days prior to the execution of the License Agreement created a conflict in the ownership and license interests warranted by Morton and GOET in the agreement.  As discussed above with respect to Plaintiffs' breach-of-contract claim, this conflict triggered paragraph twelve of the License Agreement, which provided for resolution of the conflict in favor of Plaintiffs.[75]  Morton failed to comply with paragraph twelve of the License Agreement.[76]

However, Plaintiffs cannot obtain both breach-of-contract

---

[73]    See Doc. 76, Pls.' Mot. for Summ. J., p. 9.

[74]    Doc. 76-2, Ex. 1 to Pls.' Mot. for Summ. J., License Agreement, ¶ 2.

[75]    See Doc. 76-2, Ex. 1 to Pls.' Mot. for Summ. J., License Agreement, ¶ 12.

[76]    See Doc. 76-1, Pls.' Mot. for Summ. J., Brett Davidson Aff., ¶ 11.

damages for the failure to obtain a license in the Wagner patent and a declaration that they own a license for the same patent. Therefore, Plaintiffs must elect a remedy.  Pending that election, the court **RECOMMENDS** that summary judgment for declaratory relief in favor of Plaintiffs be **DENIED** at this time.

### 5.  Defamation and Business Disparagement

In Texas, a claim for defamation requires proof that:

> (1) the defendant published a factual statement (2) that was capable of defamatory meaning (3) concerning the plaintiff (4) while acting with either negligence, if the plaintiff is a private individual, or actual malice, if the plaintiff is a public figure or public official, concerning the truth of the statement.

Vice v. Kasprzak, 318 S.W.3d 1, 12 (Tex. App.-Houston [1st Dist.] 2009) (citing WFAA-TV, Inc. v. McLemore, 978 S.W.2d 568, 571 (Tex. 1998)).  A written defamatory statements, or libel, that is "so obviously hurtful to the person aggrieved that [it] require[s] no proof of [its] injurious character to make [it] actionable" constitutes libel per se and does not require proof of damages. Morrill v. Cisek, 226 S.W.3d 545, 549 (Tex. App-Houston [1st Dist.] 2006, no pet.).  A plaintiff must prove actual damages, however, in instances where the court must "resort to innuendo or extrinsic evidence" to determine whether the statement is defamatory.  Main v. Royall, 348 S.W.3d 381, 390 (Tex. App.--Dallas 2011, no pet.).

The court decides whether the statement has a defamatory meaning by determining whether it "tends to injure the person's

28

reputation and thereby expose the person to public hatred, contempt or ridicule, or financial injury, or to impeach that person's honesty, integrity, or virtue." Abbott v. Pollock, 946 S.W.2d 513, 519 (Tex. App.–Austin 1997, writ denied); see Tex. Civ. Prac. & Rem. Code 73.001; Carr v. Brasher, 776 S.W.2d 567, 570 (Tex. 1989).

In a similar vein, to recover on a claim for business disparagement, Plaintiffs must establish the following: (1) Morton's publication of a disparaging statement; (2) falsity of that statement; (3) malice; (4) Morton's lack of privilege; and (4) special damages. C.P. Interests, Inc. v. Cal. Pools, Inc., 238 F.3d 690, 694 (5th Cir. 2001) (citing Hurlbut v. Gulf Atl. Life Ins. Co., 749 S.W.2d 762, 766 (Tex. 1987)).

Here, Plaintiffs' defamation and business disparagement claims hinge on statements contained in emails posted on the public forum www.stockhouse.com by an individual using the pseudonym "Whimsical" and, in one instance, an email signature of emorton96@mac.com.[77] In support of their motion, Plaintiffs have provided Davidson's testimony, in affidavit form, that Morton used the name "Whimsical" to post defamatory statements on www.stockhouse.com.[78]

Davidson stated, "Ms. Morton also signed [the March 26, 2010] posting with her email address (emorton96@mac.com), which

---

[77] See Docs. 76-7, 76-8, 76-9, 76-10, and 76-11, Exs. 6-10 to Pls.' Mot. for Summ. J., www.stockhouse.com Postings by "Whimsical."

[78] See Doc. 76-1, Pls.' Mot. for Summ. J., Brett Davidson Aff., ¶¶ 12-16.

establishes that she is "Whimsical."[79]   That one of the postings made by "Whimsical" is signed with Morton's email address constitutes some evidence that Morton composed and published not only that posting, but also the others under the pseudonym "Whimsical."

The court, however, declines to make the deductive inference that Morton and "Whimsical" are one and the same in the absence of competent summary judgment evidence, in admissible form, establishing that Morton was the author and publisher of the alleged defamatory statements that do not include her email address.  See Fed. R. Civ. P. 56(c).  Although Davidson may believe that Morton published defamatory statements under the name "Whimsical," he has failed to show that he has personal knowledge that this was the case.  See Fed. R. Civ. P. 56(c)(4); Fed. R. Evid. 602.  Aside from the one posting signed using Morton's email address, emorton96@mac.com, coupled with other postings by "Whimsical," Plaintiffs have not pointed the court to any other evidence connecting Morton to the remainder of the alleged defamatory statements.  Therefore, the court will consider only the alleged defamatory statements contained in Morton's March 26, 2010 posting on www.stockhouse.com.

The defamatory and disparaging statements of which Plaintiffs

---

[79]   See Doc. 76-1, Pls.' Mot. for Summ. J., Brett Davidson Aff., ¶ 13; Doc. 76-8, Ex. 7 to Pls.' Mot. for Summ. J., March 26, 2010 Posting.

complain in the March 26, 2010 posting are as follows:

> WEE [Wavefront] does not have a fully paid up license
> with my patent # 5836389. . . . He tried to buy
> patent interest in 2007 and defaulted. He has
> referred to this before in interviews. The potential
> purchase was meant for protection with ASR lawsuit.
> Davidson is 100% B.S.! No proof of anything!!!
> Would like to know "if" and where he is using this as
> well! [H]e needs to substantiate what he [ ] is
> posting![80]

The court is not satisfied that these statements, standing alone, constitute libel per se, and Plaintiffs have presented no argument to the contrary. Because the court finds that the statements are not libel per se, Plaintiffs must provide competent summary judgment evidence of actual damages in support of their claim. See Main, 348 S.W.3d at 390. Similarly, Plaintiffs must provide evidence of special damages in order to sustain their claim against Morton for business disparagement. See C.P. Interests, Inc. v. Cal. Pools, Inc., 238 F.3d at 694. Plaintiffs have not done so.

Thus, in the absence of competent summary judgment evidence as to damages for either claim, the court **RECOMMENDS** that summary judgment on Plaintiffs' defamation and business disparagement claims be **DENIED**.

### 6. False Advertising

Plaintiffs move for summary judgment on their claim of false advertising in violation of § 1125(a) of the Lanham Act. In order

---

[80]    Doc. 76-8, Ex. 7 to Pls.' Mot. for Summ. J., March 26, 2010 Posting.

to establish a claim of false advertising under this provision of Lanham Act, a plaintiff must show:

> (1) that the defendant made a false statement of fact about its product in a commercial advertisement; (2) that the statement actually deceived or has a tendency to deceive a substantial segment of its audience; (3) the deception is likely to influence the purchasing decision; (4) the defendant caused the false statement to enter interstate commerce; and (5) the plaintiff[] ha[s] been or [is] likely to be injured as a result.

Logan v. Burgers Ozark Country Cured Hams Inc., 263 F.3d 447, 462 (5th Cir. 2001) (quoting Blue Dane Simmental Corp. v. Am. Simmental Ass'n, 178 F.3d 1035, 1042 (8th Cir. 1999)).  Regarding the second element, a plaintiff generally must "introduce evidence of the statement's impact on consumers."  See Pizza Hut, Inc. v. Papa John's Intern., Inc., 227 F.3d 489, 495 (5th Cir. 2000).  A plaintiff need not produce such evidence, however, if the alleged false statements are shown to be literally false.  See id. at 497.

    In support of their motion, Plaintiffs cite three advertisements—a mass email sent by Morton and two postings on freeclassifiedads.com and www.usmarketdb.com, respectively— regarding the sale of a five-year, non-exclusive license for the Wagner patent.[81]  Each of the three advertisements attributed Plaintiffs' increased oil production to their obtaining a license

---

[81]    See Doc. 76-1, Pls.' Mot. for Summ. J., Brett Davidson Aff., ¶¶ 18-20; Doc. 76-12, Ex. 11 to Pls.' Mot. for Summ. J., Mass Email Advertisement; Doc. 76-13, Ex. 12 to Pls.' Mot. for Summ. J., Freeclassifiedads.com Advertisement; Doc. 76-14, Ex. 13 to Pls.' Mot. for Summ. J., www.usmarketdb.com Advertisement.

for the Wagner patent.[82]   The advertisements thus correlated Plaintiffs' success in the oil field with their use of the Wagner patent.[83]   Plaintiffs' summary judgment evidence supports their contention that the advertisements were literally false and that Plaintiffs' success in the oil field was due to their own patented technology, not the Wagner patent.[84]

Plaintiffs also direct the court's attention to Davidson's affidavit testimony that the advertisements: (1) had the capacity to deceive a substantial segment of consumers in the oil-production business into believing that Plaintiffs' oil field success was due to Plaintiffs' use of the Wagner patent; (2) were likely to influence whether potential licensees decided to license the Wagner patent; and (3) were circulated via the internet, as is Plaintiffs' own patented technology.[85]   Morton has failed to produce any competent summary judgment evidence to rebut this evidence.   The court therefore finds that Plaintiffs have established undisputed material facts supporting the first three elements of their false advertising claim.

_____

[82]   See Doc. 76-12, Ex. 11 to Pls.' Mot. for Summ. J., Mass Email Advertisement; Doc. 76-13, Ex. 12 to Pls.' Mot. for Summ. J., Freeclassifiedads.com Advertisement; Doc. 76-14, Ex. 13 to Pls.' Mot. for Summ. J., www.usmarketdb.com Advertisement.  Each of the advertisements includes the following: "$35,000 for a 5 Yr. non-exclusive Patent license, unlimited use, and CADS drawn off substantiated Data reports of up to 41% increase of Oil RECOVERY. Wave Front Technology Solutions Inc. V.WEE obtained License in 2007. Substantiates Proof of success . . ." Id.

[83]   See id.

[84]   See Doc. 76-1, Pls.' Mot. for Summ. J., Brett Davidson Aff., ¶ 21.

[85]   See id.

However, Plaintiffs have not produced competent summary judgment evidence that they have been, or are likely to be, injured as a result of Morton's false advertising. The evidence produced in support of injury—Davidson's expert report on damages—does not constitute competent summary judgment evidence that the court may consider with respect to the final element of Plaintiffs' false advertising claim. The court therefore **RECOMMENDS** that summary judgment on this claim be **DENIED**.

### 7. Unfair Competition

Plaintiffs move for summary judgment on their claim of unfair competition under the common law of Texas.[86] In Texas, unfair competition "is the umbrella for all statutory and nonstatutory causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters." <u>Taylor Publ'g Co. v. Jostens, Inc.</u>, 216 F.3d 465, 486 (5th Cir. 2000); <u>Laughlin Products, INc. v. ETS, Inc.</u>, 257 F. Supp.2d 863, 872 n. 12 (N.D. Tex. 2002) (quoting <u>Taylor Publ'g Co.</u>, 216 F.3d at 486). A plaintiff alleging unfair competition must establish that the defendant committed an illegal act, which is at least an independent tort, that "interfered with the plaintiff's ability to conduct its business." <u>Taylor Publ'g, Inc.</u>, 216 F.3d at 486.

Here, Plaintiffs' unfair competition claim hinges on the

---

[86] Although Plaintiffs pleaded claims of unfair competition under both the common law of Texas and § 1125(a) of the Lanham Act, Plaintiffs' summary judgment motion is silent as to their unfair competition claim under the Lanham Act. That claim is therefore not before the court for consideration.

independent tort of false advertising pursuant to § 1125(a) of the Lanham Act, discussed above.   Because the court found that Plaintiffs did not meet their summary judgment burden as to all elements of the false advertising claim, the court finds that Plaintiffs cannot establish their claim of common law unfair competition.   Therefore, the court **RECOMMENDS** that summary judgment on Plaintiffs' claim of common law unfair competition be **DENIED**.

### V.  Conclusion

Based on the foregoing, the court **RECOMMENDS** that Defendant Morton's Motion to Dismiss be **DENIED**, Defendant Morton's Motion for Relief be **DENIED**, Defendant Morton's Motion to Vacate be **DENIED**, Defendant Morton's Motion to Change Venue be **DENIED**, and Defendant Morton's Motion to Strike be **DENIED,** and that Plaintiffs' Motion for Summary Judgment be **GRANTED IN PART** and **DENIED IN PART**.

Specifically, the court recommends that Plaintiffs' summary judgment motion be granted as to liability for Plaintiffs' claims of breach of contract and fraudulent inducement; summary judgment as to damages for the same should be denied.   The court will reconsider the denials on damages should Plaintiffs file competent summary judgment evidence on the extent of damages suffered. Plaintiffs' claim of negligent misrepresentation should be denied absent explanation that the economic loss rule does not apply. Plaintiffs' motion as to their claims for defamation, business disparagement, false advertising, common law unfair competition,

35

and declaratory judgment should be denied.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 2nd day of May, 2012.

Nancy K. Johnson
United States Magistrate Judge

36